IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

**MELANIE PROCTOR, ADMINISTRATRIX**
of the ESTATE OF FELIX KIRK MCDERMOTT,

      Plaintiff,

v.   Civil Action No.: 1:20-CV-37
    Judge Kleeh

ELECTRONICALLY FILED
Mar 02 2020
U.S. DISTRICT COURT
Northern District of WV

**THE UNITED STATES OF AMERICA,**
**ROBERT WILKIE,** Secretary of the Department
of Veterans Affairs,

      Defendant.

## COMPLAINT

Comes now Plaintiff, Melanie Proctor, Administratrix of the Estate of Felix Kirk McDermott, and for her cause of action against the defendant, states as follows:

1. Plaintiff, Melanie Proctor, is the daughter of Ret. Army Sgt. Felix Kirk McDermott, deceased. Plaintiff was duly appointed Administratrix of the Estate of Felix Kirk McDermott by the Tyler County Commission and brings these claims for relief for the benefit of the family and Estate of Felix Kirk McDermott.

2. The United States Veterans Health Administration is a component of the United States Department of Veterans Affairs. This federal agency is led by Cabinet Member Robert Wilkie, Secretary of the Department of Veterans Affairs. The United States of America, through the Department of Veterans Affairs, funds, operates, administers, controls, supervises, manages the business and employment affairs, and implements the healthcare program of the VA available to eligible military veterans. The Louis A. Johnson VAMC located in Clarksburg, West

Virginia is one of the many VA Medical Centers operated through Robert Wilkie's Department and its component Administration.

3. Glenn R. Snider Jr., MD, FACP is, and was at all relevant times, the Medical Center Director of the Louis A. Johnson VA Medical Center in Clarksburg, West Virginia. Previously, Dr. Snider served as the Chief of Staff at the Clarksburg VAMC since 1999. The U.S. Department of Veterans Affairs holds Dr. Snider, as the Medical Center Director, responsible for the overall delivery of quality care to the Veterans served by the Clarksburg VAMC.

4. Dr. Snider operated the Clarksburg VA through a Leadership Team. Dr. Snider, his Leadership Team, hospitalist physicians, nursing management, and pharmacy inventory management violated non-discretionary rules, directives, and protocols they were required to follow to deliver safe quality medical care to Veterans. The violations of these non-discretionary rules, directives, and protocols were a cause of Sergeant McDermott's death.

5. The United States of America, through Robert Wilkie and Dr. Glen Snider, employed Jill Taylor-Phillips, MD, Maria R. Menez, MD, Kari E. Fawcett, RN, T. Hartzell, RN, and Reta P. Mays, who participated in causing or failing to prevent the acute severe hypoglycemia event, negligent post-event management, and death of Sergeant McDermott.

6. The United States of America, through Robert Wilkie as the Secretary of the Department of Veterans Affairs, and Dr. Glenn Snider, as the Medical Center Director of the Louis A. Johnson VA Medical Center in Clarksburg, WV, is legally liable for the medical negligence of its employed physicians, nurses, pharmacy personnel, technologists, and nursing assistants, and is liable for the violations of non-discretionary rules, directives, and protocols by Dr. Snider, and his Leadership Team, hospitalist physicians, nursing management, and pharmacy inventory

2

management which were a cause of Sergeant McDermott's wrongful death.

7. Plaintiff's causes of action arise under the Federal Tort Claims Act of 1948, 28 U.S.C. §§1346(b), 2671, *et seq.*, and 38 U.S.C. §7316(a) and (f), and West Virginia Code §§55-7B-1, *et seq.*, and West Virginia Code §55-7-6.

8. This Court has jurisdiction pursuant to 28 U.S.C. §1346(b). Pursuant to 28 U.S.C. §1391(e), venue is proper in the Judicial District where a substantial number of the events involved occurred or where the plaintiff resides, if there is no real property at issue. All the acts and omissions which give rise to the claims occurred in Clarksburg, Harrison County, West Virginia.

9. On August 21, 2019, Plaintiff submitted an administrative claim Form-SF95 to the Department of Veterans Affairs. On September 9, 2019, the U.S. Department of Veterans Affairs sent Plaintiff, through counsel, a letter acknowledging receipt of her administrative claim. More than six months have passed since Plaintiff's submission of the administrative claim and no acceptance or payment of the claim has occurred. Plaintiff deems the lack of acceptance or payment of the claim to be a denial under 28 U.S.C. §2675(a). Plaintiff has exhausted her administrative remedies.

10. Prior to April 9, 2018, the Louis A. Johnson VAMC in Clarksburg, West Virginia experienced a noticeable and statistically appreciable high death rate in patients admitted on Floor 3A. A clear pattern emerged in these dying patients demonstrating a sudden, unexpected severe decline in their respective medical condition during the night shift hours between 1:00 am and 6:00 am followed by death in patients admitted on floor 3A. In patients who fit this pattern that had glucose testing, the test results revealed sudden severe unexplained hypoglycemia.

11. Floor 3A was not an intensive care unit for patients at risk of sudden death.

A relatively small number of physicians and small number of nursing staff worked on the night shift on Floor 3A. The VAMC night shift staff on 3A knew there was an abnormally high number of patients experiencing sudden unexplained declines and knew that their floor rate for events of sudden severe unexplained hypoglycemia was unheard of in the national hospital industry.

12. The VA defines Adverse Events as untoward incidents, diagnostic or therapeutic misadventures, iatrogenic injuries, or other occurrences of harm or potential harm directly associated with care or services provided within the jurisdiction of the Veterans Healthcare System. VHA Handbook 1004.08 and VHA Handbook 1050.01. The VA defines a Sentinel Event as a type of Adverse Event that is an unexpected occurrence involving death. VHA Handbook 1050.01.

13. Reporting of adverse events is the primary mechanism through which the Veterans Health Administration National Center for Patient Safety learns about VA system vulnerabilities and how to address them. Through reported adverse events by VA medical facilities, the root causes and contributing factors are identified to prevent future events from reoccurring within the facility. VHA Handbook 1050.01. In short, the adverse event must be reported so it can be investigated, the cause of harm identified, and future harm to patients stopped. VHA Handbook 1050.01.

14. Well before the events alleged herein, according to the VA Office of Inspector General, the watchdog arm of the Department of Veterans Affairs, The Louis A. Johnson VA Medical Center, under the direction of Dr. Snider and his Leadership Team, had a history of failing to identify, report and track sentinel events that occurred at the Clarksburg VAMC, which in turn resulted in a pattern and practice of not performing appropriate root cause analysis

4

investigations to prevent similar future events from reoccurring within the facility.

15. The Floor 3A physicians and nursing management, and Dr. Snider as the Medical Center Director, had non-discretionary obligations to identify and report the Floor 3A night shift's sudden severe unexplained hypoglycemia deaths as Adverse Sentinel Events. VHA Handbook 1050.01.

16. As part of the Patient Safety algorithm associated with Adverse Sentinel Event Reporting, the Floor 3A physicians, nursing management, Dr. Snider, and his Leadership Team had non-discretionary duties to take appropriate care of the impacted patient, make the situation safe, prevent immediate recurrence, notify police or security, preserve evidence and relevant information that will aid in fully understanding the situation. VHA Handbook 1050.01. The Floor 3A physicians, nursing management, Dr. Snider, and his Leadership Team violated all these non-discretionary duties.

17. The violations of these non-discretionary obligations resulted in the failure to identify system vulnerabilities and failures that were causing patient deaths; the failure to identify the root-cause factors contributing to the patient deaths; and the failure to prevent future similar death events, including the death of Ret. Army Sgt. McDermott. The violations of these non-discretionary obligations and duties by Dr. Snider, his Leadership Team, the Floor 3A physicians, and nursing management were a continuation of this VAMC's pattern and practice of failing to identify, report and track sentinel events and failing to perform appropriate root cause analysis investigations to prevent similar future events from reoccurring within the facility.

18. There is an unwavering ethical obligation to disclose to patients harmful Adverse Events that have been sustained in the course of their Department of Veterans Affairs (VA)

5

care. VHA Handbook 1004.08. This obligation to disclose Adverse Events to patients or to the family of patients who have suffered death from an Adverse Event is a non-discretionary duty imposed on VA hospital physicians, Dr. Snider as the Medical Center Director, Dr. Pramoda Devabhaktuni as the Chief of Staff, Paul Carter as the Associate Director for Patient Care Services, the facility risk manager, and the facility Patient Safety Manager. VHA Handbook 1004.08

19. "Clinicians [physicians] and organizational leaders [Dr. Snider and his Leadership Team] must work together to ensure that disclosure is a routine part of the response to adverse events." "Honestly discussing the difficult truth that an adverse event has occurred demonstrates respect for the patient and a commitment to improving care." VHA Handbook 1050.01.

20. The explicit intent of the non-discretionary duty to disclose adverse events "is to inform patients about substantive issues related to their care, and not to manage the institution's risk." VHA Handbook 1004.08. "For the patient who is deceased, incapacitated, or otherwise unable to participate in the process of adverse event disclosure, any clinical or institutional disclosure must be communicated to the patient's personal representative". VHA Handbook 1004.08. "Clinical disclosure must be initiated as soon as reasonably possible and generally within 24 hours of occurrence." VHA Handbook 1004.08. "Institutional disclosure must be initiated as soon as reasonably possible and generally within 72 hours." VHA Handbook 1004.08.

21. Because the Floor 3A night shift's sudden severe unexplained hypoglycemia deaths constituted "a harmful or potentially harmful adverse event which was not an isolated case but rather a systems issue affecting multiple patients", Dr. Snider, his Leadership team,

6

and the VA hospital physicians had a non-discretionary duty to initiate the process for Large Scale Disclosure of Adverse Events. VHA Handbook 1004.08.

22. Robert L. Jesse, M.D., Ph.D., as the Principal Deputy Under Secretary for Health, had a non-discretionary duty to: (1) establish an environment in which senior leaders, including Dr. Snider, "ensure that there is staff understanding of what constitutes an adverse event and that there is a just culture in which VHA program staff, VISN and facility leadership, and facility staff members feel psychologically safe to report such events"; and (2) ensure "that VHA senior leaders establish an environment in which VHA program staff, VISN and facility leadership, and facility staff provide ethically-warranted disclosures to Veterans and/or their personal representative."  VHA Handbook 1004.08.

23. Robert L. Jesse, M.D., Ph.D. has demonstrated a consistent pattern of violating these non-discretionary duties. The staff of the Louis A. Johnson VAMC at Clarksburg do not feel safe to report Adverse Events and ethically warranted disclosures were not and are not being made to Veterans or their personal representatives.

24. The violations of the non-discretionary obligations by Robert L. Jesse, M.D. Ph.D., the Floor 3A physicians, Dr. Snider, Dr. Devabhaktuni, and Paul Carter to make adverse event disclosures to the personal representatives of the Floor 3A night shift sudden severe unexplained hypoglycemia death patients resulted in a pattern of violations of patient and family rights; resulted in a failure to provide personal representatives with information needed to make informed consent decisions regarding treatment options and autopsies; and resulted in a failure to prevent future similar death events, including the death of Sergeant McDermott.

25. The physicians making the pronouncement of death had a non-discretionary

7

duty to refer Floor 3A night shift sudden severe unexplained hypoglycemia death patients for autopsy to the Office of the Chief Medical Examiner Forensic Investigative Unit. This non-discretionary duty applied regardless of the interval between the underlying/inciting cause of death and the death itself. See VA Statement of Medical Examiner Criteria set forth in each Pronouncement of Death Record, and MCM #11-110.

26. The Floor 3A physicians violated this non-discretionary duty for every Floor 3A night shift sudden severe unexplained hypoglycemia death patient. Autopsies performed at the time of death would have revealed exogenous insulin administration as the cause of death.

27. Prior to April 9, 2018, the Floor 3A night shift experienced sudden severe unexplained patient decline leading to patient death on at least the following dates: July 20, 2017, January 29, 2018, March 6, 2018, March 22, 2018, and two Patient Events during the night of April 3, 2018. Upon information and belief, no Sentinel Event/Adverse Event or root cause analysis was timely reported for any of those deaths; no Adverse Event for Clinical Disclosure or Large Scale Disclosure was initiated; and no physician referral for Autopsy to the Office of the Chief Medical Examiner was made for any of those deaths.

28. The widespread system of failures to perform the non-discretionary Adverse Sentinel Event reporting, mandatory personal representative disclosures, and autopsy referrals caused Sergeant McDermott's Floor 3A night shift sudden severe unexplained hypoglycemia death on April 9, 2018 and events resulting in the deaths of at least four (4) more Veterans on April 10, 2018 (two patients), June 12, 2018, and June 18, 2018.

29. By the time Medical Center Director Dr. Snider alerted the Office of Inspector General (OIG), the watchdog arm of the Department of Veterans Affairs, that many Floor

3A night shift sudden severe unexplained hypoglycemia deaths had occurred, emergency department staff openly commented that if patients were admitted to Floor 3A they would die, and there was active communication among the Clarksburg VAMC staff, including Dr. Snider and the Leadership Team, about the unexplained deaths long before those deaths were ever reported to the OIG.

30. Dr. Snider as Medical Center Director had additional non-discretionary duties to ensure physicians reported the adverse drug reactions which occurred as part of the Floor 3A night shift sudden severe unexplained hypoglycemia deaths. VHA Directive 1070. Dr. Snider violated the nondiscretionary duties imposed on him to ensure these adverse drug reactions were reported in compliance with VHA Directive 1070, facility based written procedures, and the facility ADE reporting system.

31. Ret. Army Sgt. Felix Kirk McDermott was admitted to the Louis A. Johnson VAMC, Clarksburg, on April 6, 2018 for shortness of breath and concern for food aspiration pneumonia. He was placed on antibiotic therapy. By the afternoon of April 8, 2018, Mr. McDermott's lethargy and delirium from pneumonia was improved, and the plan was to reduce antibiotics. Mr. McDermott was fully awake and talking with his family and nursing staff, but with some confusion, which was baseline for him, and discussions regarding discharge were discussed between VAMC staff and Mr. McDermott's family. At shift change on the evening of April 8, 2018 at 8:30 p.m. Mr. McDermott was resting with no signs of acute distress. Mr. McDermott's glucose levels were tested at normal levels of 113 on April 7, 2018 and 100 on April 8, 2018. Mr. McDermott had no medical history of diabetes. There was no order for insulin administration.

32. At 2:00 a.m. on April 9, 2018, Mr. McDermott was found restless and

9

seemed to be in pain. His sheets were moist, and he was complaining that he needed to urinate. Mr. McDermott became unresponsive, he was cold, clammy and a finger stick glucose test revealed a severe hypoglycemia level of 12. There was no medical explanation for his severe hypoglycemia. Dr. Jill Taylor-Phillips was notified. Dr. Phillips noted that Mr. McDermott had pinpoint pupils, no gag reflex, and white foam at his mouth. She placed orders to raise his glucose level but the medication she ordered did not stabilize the glucose level. Dr. Phillips noted that she was not able to interpret the EKG results. She tried Narcan with no improvement. It is clear from Dr. Phillips' note that she did not understand the cause of Mr. McDermott's sudden unexplained severe hypoglycemia. She considered a stroke, infection, heart failure, and over administration of an opiate. Ultimately, Dr. Phillips decided to monitor his blood sugar and defer additional testing until later. Dr. Maria Menez assumed care when Dr. Phillips ended her shift in the morning. Dr. Menez's notes reflect that she performed no new testing beyond what was ordered by Dr. Phillips. The lack of medical investigation into the cause of the medically unexplained severe hypoglycemia is a deviation from the appropriate standard of medical care.

33. Dr. Taylor-Phillips and Dr. Menez violated medical standards of care in managing Mr. McDermott's sudden unexplained severe hypoglycemia by failing to order blood insulin and c-peptide concentrations, as well as sulfonylurea administration, careful dextrose and electrolyte management, frequent blood glucose monitoring, resuscitation measures for his hypoxemia and respiratory distress, and close vital signs monitoring. There was a complete lack of proper medical investigation and treatment regarding Mr. McDermott's severe hypoglycemia while there was still an opportunity to provide medical help for the condition. This had become, and continued to be, a pattern and practice of the Clarksburg VAMC when caring for several other

similarly situated veterans who were admitted to Floor 3A.

34. Dr. Taylor Phillips and Dr. Menez further violated medical standards of care by failing to communicate the unexpected nature of the events surrounding Mr. McDermott's change in medical status to Mr. McDermott's daughters so they could make informed decisions about treatment options.

35. Ret. Army Sgt. McDermott died at 9:00 am on April 9, 2018. Dr. Menez made the pronouncement of death and determined "Cause of Death: Aspiration Pneumonia with sepsis." Although Mr. McDermott met mandatory criteria for referral to the State Medical Examiner, Dr. Menez wrongfully determined that he did not and failed to make the mandatory referral. Dr. Phillips and Dr. Menez failed to advise Mr. McDermott's family that his death was an Adverse Sentinel Event and that his death met the mandatory criteria for autopsy referral.

36. Mr. McDermott's sudden severe hypoglycemia of 12 with an inability to stabilize was not consistent with or caused by Aspiration Pneumonia with sepsis. The sudden severe hypoglycemia of 12 with an inability to stabilize was also not consistent with Mr. McDermott's improved medical status shortly before the unexplained event.

37. Dr. Menez failed to comply with medical standards of care in issuing her stated cause of death.

38. Mr. McDermott's Floor 3A night shift sudden severe unexplained hypoglycemia death was similar to the pattern of events occurring with at least six (6) prior Floor 3A night shift death events.

39. At all times alleged herein, Dr. Snider, his Leadership Team, hospitalist physicians, nursing management, and pharmacy inventory management assumed a non-

11

discretionary special obligation or duty to Mr. McDermott when it accepted him as a hospital patient of protective care to protect him against foreseeable injurious acts of third persons, including members of the VAMC staff. This special obligation of protective care also extended to veteran patients who were similarly situated to Mr. McDermott. This duty was only heightened by the age related mental and physical infirmities of Mr. McDermott and other similarly situated veterans. Here, the hospital-patient relationship imposed a special duty on the VAMC to take reasonable precautions to protect patients like Mr. McDermott from wrongful conduct by third parties, including VAMC staff, which could have and should have been reasonably anticipated given the events taking place on Floor 3A.

40. Dr. Taylor-Phillips, Dr. Menez, Dr. Snider as the Medical Center Director, Dr. Pramoda Devabhaktuni as the Chief of Staff, Paul Carter as the Associate Director for Patient Care Services, the facility risk manager, and the facility Patient Safety Manager had a non-discretionary duty to identify and report Mr. McDermott's death as an Adverse Sentinel Event, perform a Clinical Disclosure, and refer for Large Scale Disclosure. Michelle R. Morgan, CRT, Kari E. Fawcett, RN, T. Hartzell, RN, and Reta P. Mays had a non-discretionary duty to identify and report Mr. McDermott's sudden change in medical condition as an Adverse Event. The failure to timely complete these non-discretionary duties resulted in a root cause analysis not being performed to protect and prevent the future deaths of more Veterans. As a result, at least four (4) more Veterans died from events occurring on April 10, 2018 (two deaths), June 12, 2018, and June 18, 2018.

41. More than six months after Ret. Army Sgt. McDermott died, his body was disinterred and an autopsy was performed at the Dover Air Force Base by Paul Uribe, LTC, MC,

USA, Deputy Medical Examiner. Dr. Uribe found evidence of an injection injury on the left lower abdomen with histologic and immunohistochemical findings consistent with subcutaneous insulin injection. Dr. Uribe determined the cause of death to be exogenous insulin administration. As a result, Mr. McDermott's death was ruled a homicide by Dr. Uribe.

42. The insulin injection was administered by, upon information and belief, an employee of the VAMC during the night shift of April 9, 2018. No physician order was issued for the insulin injection. The VAMC employee who administered the insulin shot violated nursing standards of care by administering insulin to Mr. McDermott.

43. The VAMC employee who administered the insulin shot violated nursing standards of care and non-discretionary duties by failing to document and report Mr. McDermott's adverse medication event. These violations occurred while the VAMC employee who administered the insulin shot was on-the-clock, on Defendant's premises, using Defendant's equipment and insulin, and it was within this employee's scope and course of her employment and part of her job duties to document and report Mr. McDermott's adverse medication event following the administration of insulin so that he could receive appropriate and timely life-saving treatment. See VHA Directive 1070 and others.

44. Dr. Snider, his Leadership Team, nursing managers on Floor 3A, Kari E. Fawcett, RN, Chief of Pharmacy/Pharmacy Supervisor, T. Hartzell, RN and other VA employees violated standards of care and non-discretionary duties related to the control and handling of "high risk medications", which include insulin, by failing to securely store insulin and prevent free access by unauthorized personnel; by stockpiling insulin in patient care areas in far greater amounts than needed for actual use; by failing to keep insulin stored in a locked area with a point of care

dispensing system; by failing to limit access to staff with an appropriate clinical need; failing to document the ordering and administration of high risk medications; failing to use a bar coding system before high risk medications were administered; by failing to "require additional controls over high risk medications to reduce the likelihood of intentional or unintentional untoward use"; by failing to have its Chief of Pharmacy/Pharmacy Supervisor review how high risk medications were in fact being stored, handled and controlled; and by failing to follow the "Joint Commission and Institute for Safe Practices (ISMP) recommendations to ensure the highest standard possible". See VA Medical Center, Clarksburg, WV Memorandum No. 119-27. Subject: High Risk Medication: dated April 2015. Dr. Snider, his Leadership Team, nursing managers on Floor 3A and pharmacy personnel violated standards of care and non-discretionary duties by failing to track, perform insulin reconciliations, enforce safe insulin storage and safe administration of insulin. See VHA Directive 1014 and others.

45. At all times relevant to the matters asserted in this Complaint, Robert L. Jesse, M.D., Ph.D., as the Principal Deputy Under Secretary for Health, Dr. Snider as the Medical Center Director, Dr. Pramoda Devabhaktuni as the Chief of Staff, Paul Carter as the Associate Director for Patient Care Services, the facility risk manager, and the facility Patient Safety Manager, Jill Taylor-Phillips, MD, Maria R. Menez, MD, Michelle R. Morgan, CRT, Kari E. Fawcett, RN, T. Hartzell, RN, and Reta P. Mays were the agents and employees of the United States of America and were acting in the scope and course of their employment, and were acting in the context of providing medical services or overseeing and administering the provision of medical services. As such, all acts of these individuals are imputed to their employer/principal, Defendant United States of America.

46.     Dr. Snider, his Leadership Team, nursing managers on Floor 3A, and supervisory employees with oversight of the VAMC employee who administered the insulin shot failed to monitor this employee's clinical activities to keep them within the authorized scope of practice and appropriate as required by standards of care and non-discretionary nursing assistant scope of practice provided in VHA Directives, Handbook, and Facility Standard Operating Procedures. Moreover, upon information and belief, the VAMC employee who administered the insulin shot was not qualified, and was never qualified, to be a nursing assistant working at the Clarksburg VAMC, but she was working in that role at times alleged herein.

47.     Dr. Snider, his Leadership Team, nursing managers on Floor 3A, and supervisory employees with oversight of the VAMC employee who administered the insulin shot failed to take appropriate action to correct, retrain, and/or stop this employee from performing insulin injections on patients. They had a duty to remove her from one on one patient interaction as required by standards of care and non-discretionary employee review, medication administration standard operating procedures, and patient safety alert policies and directives. See VHA Directive 1014 and others.

48.     Defendant, by and through its employees, violated their duties owed to Ret. Army Sgt. McDermott including: the duty to exercise reasonable care in providing him medical treatment and timely and accurately diagnosing and treating his medical condition; the special duty to take reasonable precautions to protect him from reasonably foreseeable harm and injury, especially in his incapacitated state; duty to identify previous similar events as sentinel events; duty to preform root cause analyses on previous similar events in order to prevent future similar events, including the death of Mr. McDermott; duty to follow high risk medication requirements; duty to

15

disclose dangerous conditions present in its facility that could cause him harm; duty of full disclosure of information he and his personal representative needed to make informed decisions about treatment options; duty to offer alternative location of care options in light of dangerous conditions which existed on Floor 3A; duty to refer for autopsy; and duty to fully disclose all the circumstances surrounding the causes which contributed to Mr. McDermott's death.

49. The wrongful death of Ret. Army Sgt. McDermott was a foreseeable consequence of the Defendant's negligence committed by and through its employees as set forth in all the preceding paragraphs.

50. The United States of America, and its agents and employees were negligent and breached the applicable standards of care in caring for and treating Ret. Army Sgt. McDermott as set forth in all the preceding paragraphs.

51. The United States of America is vicariously liable for the negligence of its employees and agents and it is specifically estopped from denying vicarious liability under principles of employment and agency law.

52. As a direct and proximate result of Defendant's negligence, carelessness, recklessness, incompetent management and supervision, willful lack of care, deviations from the applicable standard of medical care, and violations of non-discretionary duties, protocols, directives and rules, Ret. Army Sgt. McDermott suffered pain, fear, mental anguish, anxiety and then death. Felix Kirk McDermott, deceased, and his Estate suffered all damages allowed under West Virginia Code §55-7-6. In that regard, the Estate has incurred the funeral and burial expenses, as well as the loss of Veteran's and other financial benefits; loss of services of the decedent; loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention,

protection, advice, guidance, as well as all other damages allowed by law.

**WHEREFORE,** Melanie Proctor, Administratrix of the Estate of Felix Kirk McDermott, demands judgment from the Defendant in such sums as will adequately compensate the Estate for the damages, harms and losses caused by Defendant, which said sums are well in excess of the amounts necessary to confer jurisdiction on this Court, and for such other relief as may be proper under the law.

           **MELANIE PROCTOR, Administratrix**
           **Of the ESTATE OF FELIX KIRK**
           **MCDERMOTT,**

           **By Counsel**

  /s/   Tony L. O'Dell
Tony L. O'Dell (WV #5770)
Cheryl A. Fisher (WV #6379)
TIANO O'DELL, PLLC
Post Office Box 11830
118 Capitol Street
Charleston, WV 25339
(304) 720-6700
*Counsel for plaintiff*